## Waliser v. Tada
*[Cite as 2 AOA 521]*

*Case No. 89AP-590*
*Franklin County, (10th)*
*Decided March 6, 1990*

R.C. 2307.50
R.C. 2317.02
R.C. 2929.23

*Dagger, Johnston, Miller, Ogilvie & Hampson, Mr. Randy L. Happeney and Mr. Mark R. Riegel; and Mr. Arthur H. Thomas, Jr., for appellant.*

*Lane, Alton & Horst, and Mr. James K. Reuss; and Mr. James B. Harris, for appellee Choices for Victims of Domestic Violence, Inc.*

REILLY, P.J.

Plaintiff, David H. Waliser, married defendant, Hiroko Tada, in 1975. They lived as man and wife in California for ten years, during which time they had a son, Brian Waliser. In 1985, they moved to Ohio with their now two-year-old son. Then the marriage deteriorated. Hiroko did not want to live in Ohio and wished to return to California. She also accused her husband of repeated emotional abuse.

In June 1986, Hiroko called the suicide prevention center and was referred to defendant, Choices of Victims of Domestic Violence, Inc. ("Choices"). Hiroko left home with her son Brian and went to Choices in July 1987, where she apparently stayed for over a month. Hiroko did not tell plaintiff that she was leaving, nor did she ever tell him where she and their son were staying.

Choices is a non-profit organization formed to provide shelter and counsel to women and children who have been victims of domestic violence. Choices does not publish the address of the shelter in order to protect the safety of the women staying there. Upon inquiry, Choices will neither confirm nor deny the presence of anyone within the shelter. They will, however, take a message and post it on a bulletin board inside the shelter.

Plaintiff immediately suspected that his wife and son were at Choices. He both called and visited the shelter, attempting to communicate with his wife. Plaintiff was told that Choices would neither confirm nor deny the identity of any client. Plaintiff also filed a missing person's report and eventually filed for divorce in Franklin County. Process was sent by certified mail to Choices in an attempt to obtain

jurisdiction over Hiroko, but it was returned "addressee unknown."

Hiroko eventually left Ohio with her son and went to California. After six months in California and an apparent attempt by plaintiff to abduct his son, Hiroko filed for divorce in California and was awarded temporary custody of Brian.

This action was filed by plaintiff and included defendants Hiroko Tada and Choices. The complaint alleges three causes of action: a civil suit under R.C. 2307.50 which provides damages against anyone who commits a "child stealing crime," a complaint of negligent infliction of emotional distress; and a complaint of infliction of emotional distress.

Plaintiff appeals from the judgment of the trial court granting summary judgment in favor of Choices on all three causes of action. Plaintiff asserts the following assignment of error:

"I. The Trial Court erred in ruling that Choices must be charged with a criminal act to be subject to a civil action under R.C. 2307.50.

"II. The Trial Court erred in ruling that Choices had no legal duty to Appellant as parent of Brain Waliser, and that Choices was entitled to summary judgment on the negligence claim.

"III. The Trial Court erred in ruling that Choices' conduct was not sufficiently 'extreme and outrageous' to support a cause of action for intention infliction of emotional distress.

"IV. The Trial Court erred in granting Choices' motion for a protective order against discovery requests of Appellant.

"V. The Trial Court erred in ruling that Appellant's Requests for Admissions were not deemed admitted under Civil Rule 36."

Plaintiff's first assignment of error involves the application of R.C. 2307.50, a civil action for interference with a possessory interest in a minor. The statute provides a parent who has been deprived of a possessory interest in his child as a result of a child stealing crime with a civil action against the offender. A child stealing crime is defined as a violation of R.C. 2905.01, 2905.02, 2905.09 or 2919.23.

Choices contends and the trial court agreed that R.C. 2307.50 may only be used when a defendant is actually charged with a child stealing offense. In this case, no criminal charges were filed. Plaintiff contends that the trial court was in error in so construing the statute.

Choices does not refer to any specific section of R.C. 2307.50 which provides that a defendant must be charged with a child stealing crime to be held civilly liable. Its contention is based on implications drawn from the statute's use of the phrase, "a victim of a child stealing crime."

A court need not construe or interpret a statute when its terms are clear and unambiguous. *Wingate* v. *Hordge* (1979), 60, Ohio St. 2d 55, 58. "The cardinal rule of statutory construction is that a clear and simple statute means what it says, no more, no less." *Revesz* v. *Doehler Jarvis* (1968), 14 Ohio App. 2d 156, 160. "An unambiguous statute is to be applied, not interpreted." *Alen* v. *Tressenridger* (1905), 72 Ohio St. 77, 90.

The term "a child stealing crime" is neither ambiguous nor does it imply that a criminal charge is a necessary prerequisite to an R.C. 2307.50 civil action. In an R.C. 2307.50 civil suit, the elements of the cause of action are the elements of any one of the designated child stealing crimes. The use of the terms, "a child stealing crime," is simply a convenient wasy of specifying the elements necessary to maintain a cause of action. Further, since the civil suit is based upon a criminal statute, R.C. 2307.50 applies criminal terminology such as "victim," "crime," and "offender." The use of such words does not imply the necessity of a criminal charge any more than it implies that use of the rules of criminal procedures.

Choices' reliance on R.C. 2307.50(C) is also misplaced. The fact that the Legislature provided that a defendant need not be convicted of a child stealing crime to be held civilly liable does not imply that he must be charged with one. The section is neither inconsistent nor meaningless in the absence of a requirement that criminal charges be filed. It simply provides that in the civil action, the trier of fact can determined the defendant committed the crime whether or not the defendant has been convicted of or pled guilty to a child stealing crime.

The statute does not require, anywhere within its terms, that a defendant be charged with a child stealing crime. The statute's terms are both clear unambiguous. Thus, the trial court erred when it held that R.C. 2307.50 requires a plaintiff to file a criminal charge as a prerequisite to a civil suit. The error, however, is not prejudicial because Choices could not, as a matter of law, have committed the child stealing crime alleged in the complaint, R.C. 2919.23, Interference with Custody.

The relevant portion of R.C. 2919.23, Interference with Custody, provides:

"(A) No person, knowing he is without privilege to do so or being reckless in that regard, shall entice, take, keep or harbor any of the following persons from his parent, guardian or custodian:

"(1) A child under the age of eighteen. ***"

Assuming that Choices did "harbor" the child from his parent, even though the mother at all times maintained custody of the child, the question remains whether the statute makes this conduct criminal. The pivotal words in the statute are the words "from his parent, guardian or custodian."

R.C. 3109.03 provides that when the question of custody is brought before a court, the parents "*** shall stand upon an equality as to the care, custody and control ***" of their children. The Supreme Court has held that "in the absence of an agreement or binding court order parents have equal rights to custody of their children." *Pasqualone* v. *Pasqualone* (1980), 63 Ohio St. 2d 96, 100.

Where a mother and father have equal rights to the custody of a child, each has a full right of custody subject only to the rights of their spouse. The Legislature in enacting R.C. 2919.23 did not intent to make criminal the taking of a child by one parent without the permission of the other when both have equal rights. Parents may disagree, quarrel and take unilateral action regarding the welfare of their children without incurring criminal liability. The proper remedy in such a case is a custody order issued by the appropriate court. Since Hiroko did not violate R.C. 2919.23 by taking the child from its father, neither did Choices violate the statute by giving Hiroko shelter.

While the trial court erred in its interpretation of R.C 2307.50, the error was nonprejudicial since Choices could not as a matter of law have violated R.C. 2919.23.

Plaintiff's first assignment of error is not well-taken.

As the determination of the second and third assignments of error is based on our resolution of the fourth assignment of error, that issue with be considered first.

Plaintiff served on Choices both a set of interrogatories and a request for the production of documents. Choices moved for and was granted a protective order barring discovery on grounds of privilege.

R.C. 2317.02 provides in relevant part:

"The following persons shall not testify in certain respects:

"***

"(G) *** [A] person licensed or registered under Chapter 4757. of the Revised Code and rules adopted under it as a professional counselor, counselor assistant, social worker, social worker assistant, or independent social worker concerning a confidential communication made to him by his client in that relation or his advice to his client. ***"

Privileges, being in derogation of common law, are to be strictly construed. *Weis* v. *Weis* (1947), 147 Ohio St. 416. The privilege by its terms, applies only to communications between licensed social workers and their clients. Further, the party claiming a privilege has the burden of establishing it. *Waldmann* v. *Waldmann* (1976), 48 Ohio St. 2d 176. In this case, Choices did not even establish that there were any licensed social workers employed at the shelter, must less that all communications with Hiroko were both confidential and made to a licensed social worker. Consequently, the trial court's granting of the protective order was in error.

Plaintiff's fourth assignment of error is well-taken.

In the second assignment of error, plaintiff maintains that the trial court erred in granting summary judgment in favor of Choices on the negligence claim. The trial court held that Choices as a matter of law owed no duty to plaintiff. Hence, an action in negligence could not be maintained. Since the court prematurely granted summary judgment, the issue of whether Choices owed a legal duty to plaintiff upon which a claim of negligence may be founded is not ripe for determination.

Civ. R. 56(C) provides that summary judgment will only be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Further, the evidence is to be construed most strongly in favor of the non-moving party. Summary judgment should not be granted when substantial discovery is not yet completed. See *Tucker* v. *Webb Corp.* (1983), 4 Ohio St. 3d 121.

Plaintiff's complaint stated a cause of action for negligent infliction of emotional distress. The Supreme Court recognized this cause of action in *Paugh* v. *Hanks* (1983), 6 Ohio St. 3d 72. To recover in any negligence action one must show the existence of a duty owing by the defendant to the plaintiff, the breach of that duty and a proximately resulting injury. *Baier* v. *Cleveland Ry. Co.* (1937), 132 Ohio St. 388. Thus, it is crucial that plaintiff establish which

acts or omissions of Choices were negligent. As plaintiff has personal knowledge only of Choices' conduct towards him, plaintiff attempted to discover Choices' conduct concerning his wife and child. Plaintiff's only attempt to ascertain Choices' conduct from those who actually had contact with this wife and child was denied. The court's protective order effectively barred plaintiff from discovering facts essential to the maintenance of the negligence cause of action. The issuance of the protective order was, however, error. Thus, material issues of fact, both relevant and possibly discoverable, remain to be decided.

Plaintiff's second assignment of error is well-taken.

In the third assignment of error, plaintiff maintains that the trial court erred in granting summary judgment on the intentional infliction of emotional distress claim. The Supreme Court recognized the tort of intentional infliction of serious emotional distress in *Yeager* v. *Local Union 20* (1983), 6 Ohio St. 3d 369. In order to recover, four elements must be proved:[1]

"1) [T]hat the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;

"2) [T]hat the actor's conduct was so extreme and outrageous as to go "beyond all possible bounds of decency" and was such that it can be considered as "utterly intolerable in a civilized community," Restatement of Torts 2d (1965) 73, Section 46, comment d;

"3) [T]hat the actor's actions were the proximate cause of plaintiff's psychic injury; and

"4) [T]hat the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it,' Restatement of Torts 2d (1965) 77, Section 46, comment j." *Pyle* v. *Pyle* (1983), 11 Ohio App. 3d 31, 34.

The trial court held that, as a matter of law, Choices' conduct was neither extreme nor outrageous. Hence, the court granted summary judgment in favor of defendant. As indicated above, however, it is not definite what constituted the conduct of Choices. Plaintiff attempted to discover these facts in order to establish that Choices' conduct was extreme and outrageous. As the discovery was erroneously prohibited, plaintiff was unable to establish the conduct alleged. Substantial discovery on a relevant issue was not complete when the trial court granted summary judgment. Unjustifiably denying information to a parent, information as to the whereabouts and safety of his missing child and spouse, can constitute negligent infliction of emotional distress if such distress in fact occurred. Plaintiff' third assignment of error is well-taken.

In the fifth assignment of error, plaintiff contends that the trial court erred in not ruling that his requests for admissions were deemed admitted under Civ. R. 36. Plaintiff served Choices with a request for admissions on June 28, 1988. Choices promptly filed for a protective order which the trial court refused. Choices then failed to respond within the 28-day period.

The trial court did not hold, as plaintiff maintains, that Choices' eventual response to the request for admissions was timely. The court held that plaintiff would not be prejudiced by permitting a late response. The Supreme Court's determination in *Cleveland Trust Co.* v. *Willis* (1985), 20 Ohio St. 3d 66, permits a court to accept untimely responses when it will aid in the presentation of the merits and the party who obtained the admissions is not prejudiced. Plaintiff was not prejudiced by the trial court's decision. Plaintiff did not forego any discovery in reliance on the request for admissions. The alleged admission was the only evidence plaintiff had that Choices aided Hiroko in changing her name and concealing her residence. There was no prejudice because plaintiff would have done nothing differently had a timely answer been filed, Since plaintiff has not relied to his detriment on the request for admissions, the trial court's decisions was not an abuse of discretion.

Plaintiff's fifth assignment of error is not well-taken.

Plaintiff's first and fifth assignments of error are overruled. The second, third and fourth assignments of error are sustained. The judgment of the trial court is reversed, and the cause is remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed;*
*cause remanded.*

WHITESIDE and BRAME, JJ., concur.
BRAME, J., of the Vinton County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

---

[1] The fact that Choices did not intend to cause plaintiff severe emotional distress is not a defense to this cause of

action. One may be liable both where one intends to inflict severe emotional distress and where one knows that such distress is certain, or substantially certain to result. Restatement of the Law 2d, Torts (1965) 77, Section 46 comment *i*. In her deposition, the director of Choices admitted that the policy of confidentiality would likely caused a spouse distress.